IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUSAN ENGLER, et al.,              :

    Plaintiffs,                    :

v.                                 :     Civil Action No. GLR-11-3597

HARRIS CORP., et al.,              :

    Defendants.                    :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Harris Corporation ("Harris") and Harris RF Communications Division's ("Harris RFCD") (collectively the "Defendants") Motion to Dismiss Plaintiffs Susan Engler, Jacqueline Hamrick, and Antoanna Romaniuk's (collectively the "Plaintiffs") Complaint. (ECF No. 11). This is a Title VII employment discrimination case in which the Plaintiffs allege they were terminated or forced to resign or retire as a result of Harris' failure to end discriminating, harassing, and retaliatory behavior by male employees in its Columbia, Maryland, office.

The issues before the Court are (1) whether Plaintiffs' sexual harassment based on hostile environment claims include sufficiently pled facts showing that Harris' conduct was either

(a) sex-based, or (b) severe or pervasive;[1] (2) whether Mss. Hamrick's and Romaniuk's Title VII gender and national origin discrimination claims include sufficiently pled facts showing that either suffered adverse employment action; and (3) whether Mss. Hamrick's and Romaniuk's Title VII retaliation claims include sufficiently pled facts showing that either suffered materially adverse employment action. The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons that follow, Defendants' Motion is granted in part and denied in part.

---

[1] Plaintiffs' Amended Complaint does not use the term "hostile environment" under the "Causes of Action" section (as it did in the original pleading), and instead appears to substitute this with allegations concerning a "pattern and/or practice of discrimination." Given Plaintiffs' numerous references in the Amended Complaint to a "hostile" work environment and "hostile" working conditions, however, it is unclear whether Plaintiffs intend to proceed with the hostile work environment claims. (See Am. Compl. ¶¶ 28, 46, 49, 54, 130, 132, 159, 171). Accordingly, Defendants, out of an abundance of caution, retained the "hostile environment" count in their Motion to Dismiss, and the Court will, likewise, address Plaintiffs' hostile environment claims. Secondly, to the extent that Plaintiffs are attempting to assert a "pattern or practice" theory of discrimination, the Court summarily dismisses this claim because it is well established that "a non-class complaint of discrimination may not rely on an alleged 'pattern and practice' claim." Pueschel v. Veneman, 185 F.Supp.2d 566, 574 (D.Md. 2002) (citing Settle v. Balt. Cnty., 34 F.Supp.2d 969, 986 (D.Md. 1999), aff'd, 203 F.3d 822 (4th Cir. 2000)).

## I.    BACKGROUND[2]

### A.   Ms. Engler

In September of 2006, Harris RFCD hired Ms. Engler as a Contract Manager in its Columbia, Maryland, office.  Ms. Engler complains that throughout her time at Harris, male employees were "hostile, rude, and demeaning."   The Amended Complaint alleges instances such as Ms. Engler being excluded from meetings, having information withheld from her, and being "chastised" and treated with "disrespect and contempt."   Ms. Engler also contends that she "did not receive the same administrative assistance as other similarly situated male managers."  Ms. Engler further asserts that male employees often questioned her knowledge of contracts.  Additionally, Ms. Engler maintains that Senior Programs Manager, Mark Cates, repeatedly and unnecessarily monitored the "comings and goings" of her and other female employees.

In August of 2008, Ms. Engler spoke with her boss, Paul Wilson, Contracts Director-1, regarding her concerns about the conduct of male employees in Harris' Columbia office.   Mr. Wilson spoke with Dana Mehnet, President of Harris RFCD in Rochester, New York, regarding Ms. Engler's concerns.  In April of 2009, Harris launched an investigation into the gender

---

[2] Unless otherwise noted, the following facts are taken from the Amended Complaint and are viewed in the light most favorable to Plaintiffs.

concerns at the Columbia office. As a result, Cortland Davidson, the local Humans Relations representative, accused Ms. Engler of "instigating charges of harassment and discrimination" through a "Women in Business" group that Ms. Engler had organized in Columbia.

After being told by Mr. Wilson that "things are not going to improve [in the Columbia office]," Ms. Engler received word that Harris was laying off employees. On June 25, 2009, the day after a debriefing about the results from the investigation into the gender concerns at the Columbia office, Ms. Engler was laid off.[3]  On July 6, 2009, John White, a male Harris compliance officer, replaced Ms. Engler.

**B.   Ms. Hamrick**

In January of 2007, Ms. Hamrick transferred from a Harris office in Annapolis Junction, Maryland, to Harris RFCD in Columbia, Maryland. Ms. Hamrick worked as a Program Manager during her tenure at Harris' Columbia office. She first reported to Mr. Cates, until Mr. Cates was laid off in 2009; then she reported to Dick Rzepkowski. Ms. Hamrick alleges that "sex discrimination and harassment from her male colleagues" resulted in "undesirable assignments" that were less important than those given to male colleagues. She also argues that less

---

[3] Harris also laid off Mr. Cates and Bruce Florack, a Level 3 Program Manager, in June 2009.

qualified male Program Managers received the "lucrative and complicated projects." Ms. Hamrick asserts that Mr. Rzepkowski "made it clear . . . that he would continue to assign her insignificant programs while she worked in his group."

Additionally, Ms. Hamrick maintains that two men from Harris' Rochester, New York, office "subjected [her] to verbal harassment and hostility." Ms. Hamrick alleges, for instance, that Mr. Rzepkowski made comments that Hillary Clinton and a female manager at the National Security Agency ("NSA") got their positions because of their husbands' influence. Ms. Hamrick further asserts that "no one ever informed her of [a] rumor" alleging that she was having an affair with Mr. Cates. Ms. Hamrick also contends that male managers at Harris "repeatedly accused female employees of 'not working their hours,'" and that, prior to his termination, Mr. Cates accused Ms. Hamrick of not working her hours. Ms. Hamrick claims that Mr. Cates raised his voice and interrupted her when she tried to address comments about her performance, but that Mr. Cates did not act this way with male employees. Finally, Ms. Hamrick maintains that she complained to Harris human resources, but they "did not take any action." Subsequently, on December 21, 2009, Ms. Hamrick resigned due to "continued sex-based discrimination and [the] hostile work environment."

C.  **Ms. Romaniuk**

In November of 2008, Harris RFCD hired Ms. Romaniuk as an Engineering Manager in the Columbia, Maryland, office.  Several months after she was hired, Ms. Romaniuk was assigned as an Engineering Manager for the "JTT" program.  Ms. Romaniuk alleges that she did not receive the support she needed to correct hardware problems she found with the program and that "[m]anagement shifted the blame over the project from the male employees to [her] and placed her on a Position Performance [sic] Plan ("PIP")."  Ms. Romaniuk also argues that "[a]s a result of male hostility and harassment," she was excluded from meetings and "assigned projects already assigned to others which were behind schedule and cost."

Further, Ms. Romaniuk contends that while all male engineering managers were directed to report to Mark Turner, Director of the CSP Software Department, Ms. Romaniuk was "forced [by management] to remain under Len Lally, Senior Engineering Manager," despite Ms. Romaniuk repeatedly asking management to transfer her from Mr. Lally's supervision.  Ms. Romaniuk asserts that "[d]espite [her] repeated objections, Mr. Lally entered [her] office every day after hours (6:00 PM) and closed the door so they could have a 'private' conversation."  Ms. Romaniuk maintains that having the door closed made her feel "extremely uncomfortable and threatened."

Additionally, Ms. Romaniuk alleges that Mr. Lally was "condescending" and repeatedly commented that her Bulgarian accent was a problem. Ms. Romaniuk argues, for example, that Mr. Lally told her he "could not understand her" and that "she was the worst person with a foreign accent that he ever had to deal with." Ms. Romaniuk contends that Mr. Lally viewed her accent as the reason for her "poor communication skills."

Ms. Romaniuk complained to a company human relations representative about "Mr. Lally's hostile treatment of her." After six months of complaining to human resources, Ms. Romaniuk was allowed to attend the meetings from which she had previously been excluded. Additionally, Ms. Romaniuk argues that, compared to male colleagues, she received harsher criticism on her reports. Ms. Romaniuk was placed on a PIP in March 2009. Ms. Romaniuk contends, however, that her performance was "equal and/or superior to similarly situated male colleagues." After Harris conducted its investigation into gender issues at the Columbia office, Harris management "removed the PIP and all other adverse reports in Ms. Romaniuk's file" and placed Ms. Romaniuk under the supervision of Dan Pierce, Director of Engineering.

By November 2009, Ms. Romaniuk was placed back on a PIP, which contained the same performance allegations as the March 2009 PIP. Ms. Romaniuk alleges, however, that Mr. Pierce

7

"dredged up" the adverse reports which had been removed after the investigation. Ms. Romaniuk claims that at the time of the November 2009 PIP, her performance was again "equal and/or superior to her similarly situated male . . . colleagues." Subsequently, on December 14, 2009, Ms. Romaniuk resigned due to her inability to tolerate the alleged discrimination and harassment.

## II.  DISCUSSION

### A.  <u>Standard of Review</u>

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 561 (2007) (internal citations omitted); <u>see</u> Fed.R.Civ.P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Twombly</u>, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." <u>Iqbal</u>, 556 U.S. at 678 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." <u>Id.</u>; <u>Twombly</u>, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Iqbal_, 556 U.S. at 678; _Twombly_, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. _Mylan Labs., Inc. v. Matkari_, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." _Tellabs, Inc. v. Makor Issues & Rights, Ltd._, 551 U.S. 308, 322 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. _Labram v. Havel_, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. _Twombly_, 550 U.S. at 556 n.3.

While a plaintiff asserting a discrimination claim is not required to plead a heightened level of factual support, "[f]actual allegations must be enough to raise a right to relief above the speculative level" in order to survive a motion to

9

dismiss. Id. at 555. Dismissal is appropriate where the alleged facts, taken as true, cannot substantiate a discrimination claim. Myers v. Md. Auto. Ins. Fund, No. CCB-09-3391, 2010 WL 3120070, at *3 (D.Md. Aug. 9, 2010).

**B. Analysis[4]**

**1. Mss. Engler's, Hamrick's, and Romaniuk's Sexual-Harassment Based on a Hostile Environment Claims**

The Court grants Harris' Motion to Dismiss all three Plaintiffs' sexual harassment based on hostile environment claims because Plaintiffs fail to allege that (1) the harassment was based on their gender, and (2) the harassment was sufficiently severe or pervasive so as to alter the conditions of their employment and create an abusive work environment.

Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C.A. § 2000e-2 (West 2012). To establish a sexual harassment claim based on a hostile work environment, a

---

[4] Plaintiffs' Complaint appears to assert thirteen causes of action. Harris moved to dismiss eleven of the thirteen causes of action. Plaintiffs subsequently withdrew their three age discrimination claims, leaving the following eight causes of action for the court to consider on this Motion to Dismiss: (1) three claims for hostile environment sexual harassment under Title VII of the Civil Rights Act; (2) one claim for national origin discrimination under Title VII; (3) two claims for sex/gender discrimination under Title VII; and (4) two claims for unlawful retaliation under Title VII.

plaintiff must show that (1) she experienced unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment; and (4) there is some basis for imputing liability to the employer. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), cert. denied, 540 U.S. 940 (2003); Riley v. Buckner, 1 F.App'x 130, 134 (4th Cir. 2001) (citing Spicer v. Commonwealth of Va. Dep't of Corrections, 66 F.3d 705, 709-10 (4th Cir. 1995) (en banc).

Harris' Motion to Dismiss challenges only the second and third elements of Plaintiffs' prima facie case: that the conduct complained of was not sex-based and was not severe or pervasive. (Def.'s Mot. to Dismiss at 5-7, 10-12, 16-17).

To establish the second element of a sex-based hostile environment claim, a plaintiff must show that "but for" her gender she "would not have been victim of the alleged discrimination." Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007) (internal citation omitted). In other words, a plaintiff needs to show that they were a target of the conduct because of their gender. Smith v. First Union Nat'l Bank, 202 F.3d 234, 242-43 (4th Cir. 2000). A plaintiff need not show that "sexual advances or propositions" were

involved.  Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (internal citation omitted).

To establish the third element of a sex-based hostile environment claim, a plaintiff must show that the work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment.'"  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citation omitted).  The plaintiff must show that she subjectively felt that the work environment was hostile or abusive and that the work environment was objectively hostile or abusive to a reasonable person. Harris, 510 U.S. at 22.  To determine the severity of a hostile work environment, courts look at the totality of the circumstances, which include: (1) the "frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

The United States Court of Appeals for the Fourth Circuit sets a "high bar" that must be cleared in order to establish the severe and pervasive element.  E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008).  Intermittent acts of harassment are insufficient to establish that a hostile work

environment is severe or pervasive. <u>Greene v. A. Duie Pyle,</u> <u>Inc.</u>, 371 F.Supp.2d 759, 762-63 (D.Md. 2005) (citing <u>Faragher v.</u> <u>City of Boca Raton</u>, 524 U.S. 775 (1998)). Indeed, Title VII does not mandate civility in the workplace. <u>Id.</u> Further, a supervisor's strict management style or degree of supervision is not evidence of actionable harassment. <u>Thorn v. Sebelius</u>, 766 F.Supp.2d 585, 601 (D.Md. 2011) <u>aff'd</u>, 465 F.App'x 274 (4th Cir. 2012) (citing <u>Webster v. Johnson</u>, 126 F.App'x 583, 588 (4th Cir. 2005) (noting that stern supervision does not evidence actionable harassment)). However, a work environment can be considered hostile if it is "consumed by remarks that intimidate, ridicule, and maliciously demean the status of women." <u>First Union Nat'l Bank</u>, 202 F.3d at 242.

Here, the Court finds that Plaintiffs' sexual harassment based on hostile work environment claims fail to meet the pleading requirements for the second and third elements of the prima facie test. First, all three Plaintiffs rely on conclusory recitations of general statements regarding the nature of the environment, but fail to point to any specific factual allegations that the harassment was based on their sex. The Amended Complaint provides no factual allegations that lead to a reasonable inference that any conduct occurred because of sex. To be sure, the Amended Complaint is replete with conclusory allegations that male employees at Harris were

hostile, rude, demeaning, disrespectful, given more important projects on which to work, and treated preferentially. The Amended Complaint does not, however, provide specific instances of harassment that lead to a reasonable inference that the conduct of male supervisors and employees was *based on* sex.

Showing that a work environment is unfriendly is simply not enough to state a claim. Under the pleading standard established in Iqbal and Twombly, the pleadings, on their face, must be plausible, not merely possible. Here, that the conduct was sex-motivated is unclear. The Court also finds the allegations implausible because they do not logically exclude other non-sex related reasons for the allegations. For example, the different treatment of the three Plaintiffs could have occurred because of personality differences. Moreover, there are no concrete facts on the face of the Amended Complaint stating that the alleged harassment occurred because the Plaintiffs were women.

None of the Plaintiffs have pled one example of male supervisors or employees stating a specific remark to them that is demeaning to women. Similarly, none of the Plaintiffs have pled one example of the male supervisors or employees being overheard making demeaning remarks about women.[5] Simply stating

---

[5] The allegations in Plaintiffs' Amended Complaint regarding the lack of a breast feeding room and Mr. Pierce's alleged

that demeaning remarks were made, without identifying what the remarks were, is not enough to allow this Court to infer that the remarks, and thus the harassment, occurred because the Plaintiffs are females. Treating fellow employees rudely and without respect, chastising fellow employees, challenging the work of fellow employees, and being condescending all demonstrate an unhappy work environment. Indeed, Plaintiffs have alleged working conditions that are unfair. Nevertheless, the fact that all three Plaintiffs are women and were treated differently, and arguably unfairly, from male colleagues is an insufficient basis to reasonably infer that the alleged conduct occurred *because of* gender. Accordingly, reading all allegations the light most favorable to the non-moving party, Plaintiffs fail to satisfy the pleading requirement for the second element of a gender-based hostile work environment claim.

Second, assuming, *arguendo,* that Plaintiffs' hostile work environment claims survived the second element of a prima facie case, the claims nonetheless fail on the third element because

---

comments that he was not the "engineering manager of the lactating facility" do not support Plaintiffs' claim because the statements did not target, nor were they specific to, the Plaintiffs since none of the Plaintiffs pled that they had any need to use a breast feeding room. Likewise, the allegations in Plaintiffs' Amended Complaint asserting that Mr. Rzepkowski commented that Hillary Clinton and a female Project Manager at the NSA got ahead because of their husbands does not support Plaintiffs' claims because the comments were not targeting or specific to the Plaintiffs, nor does the Amended Complaint allege that these comments were spoken to the Plaintiffs.

Harris' conduct is not sufficiently severe and pervasive. The Amended Complaint demonstrates that all three Plaintiffs subjectively viewed the work environment as hostile and abusive. The facts must also demonstrate, however, that it would be severe and pervasive from an objective view. The Amended Complaint vaguely states that the conduct repeatedly occurred throughout the Plaintiffs' time at Harris and fails to provide dates, the number of instances, or why the instances would be viewed as severe and pervasive from an objective point of view.

These bare and conclusory assertions are a prototypical insufficient pleading that the court cannot accept. The pleading leads only to the conclusion that a severe and pervasive hostile work environment is possible, not plausible. Even so, Harris' conduct, while unwelcome and perhaps unfair, fails to rise to the level recognized as a hostile and abusive work environment within the meaning of the law. This Court's review of cases that considered a hostile work environment claim in both the motion to dismiss and summary judgment contexts, confirms that Plaintiffs allegations do not present facts that would satisfy a prima facie case.[6] Thus, the Court finds that

---

[6] See Myers v. Md Auto. Ins. Fund, No. CCB-09-3391, 2010 WL 3120070, at *6 (D.Md. Aug. 9, 2010) (finding that allegations of employer micro-managing, harassing, and belittling employee was unwelcome but not severe and pervasive); Cole v. Hillside Family

all three Plaintiffs failed to sufficiently allege severe and pervasive conduct, and therefore, grants Harris' Motion to Dismiss all three Plaintiffs' sexual harassment based on hostile environment claims.

### 2.   Mss. Hamrick's and Romaniuk's Discrimination Claims on the basis of Gender and National Origin

The Court denies Harris' Motion to Dismiss Ms. Hamrick's gender discrimination claim because Ms. Hamrick's allegations sufficiently demonstrate that she suffered adverse employment action. Conversely, the Court grants Harris' Motion to Dismiss Ms. Romaniuk's gender and national origin discrimination claims because Ms. Romaniuk's allegations do not sufficiently demonstrate that she suffered an adverse employment action.

Title VII forbids an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

---

of Agencies, Inc., No. PJM-10-3326, 2011 WL 2413928, at *7 (D.Md. June 9, 2011) (finding that being forced to work without pay, being forced to redo assignments, being denied professional development opportunities, unjustifiably removing job duties, and isolating from co-workers is not sufficiently severe and pervasive for a hostile work environment claim); Fleming v. MaxMara USA, Inc., 371 F.App'x 115, 119 (2d Cir. 2010)(finding that excluding employee from meetings and criticizing employee's work did not support hostile work environment claim); Patton v. Indianapolis Pub. Sch. Bd., 276 F.3d 334, 339 (7th Cir. 2002) (finding that supervisor's "rude, abrupt, and arrogant" behavior and "stern and severe criticism" did not support employee's hostile work environment claim).

individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2 (a)(1) (West 2012). Absent direct evidence of discrimination, a plaintiff's Title VII discrimination claim must establish a prima facie case by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. C.A., 626 F.3d 187, 190 (4th Cir. 2010), cert. granted, 131 S.Ct. 3059 (2011), and aff'd sub nom. Coleman v. C.A. of Md., 132 S.Ct. 1327 (2012) (Supreme Court only addressed Eleventh Amendment sovereign immunity issue) (internal citation omitted).

Harris' Motion to Dismiss challenges only the third element of Plaintiffs' prima facie case, namely that the Plaintiffs suffered no adverse employment action. (Def.'s Mot. to Dismiss at 12-13, 17-18).

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). Examples of typical adverse employment actions are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).

While conduct that does not rise to the level of an ultimate employment action can constitute adverse employment action, a tangible effect on the terms and conditions of employment must still be shown. Thorn v. Sebelius, 766 F.Supp.2d 585, 598 (D.Md. 2011), aff'd, 465 F.App'x 274 (4th Cir. 2012) (internal citation omitted). A poor performance review or reprimand is generally not considered an adverse employment action. Id. Likewise, changes in assignments or work duties, even if unappealing to an employee, do not constitute an adverse employment action unless the change is accompanied by a decrease in salary or work hours, or a similar significant detrimental effect. Thorn, 766 F.Supp.2d at 599; Holland, 487 F.3d at 219.

Here, Ms. Hamrick's allegations in her gender discrimination claim show that she suffered an adverse employment action. Ms. Hamrick's allegation that she received "undesirable assignments of lower value, importance and visibility" (Am. Compl. ¶¶ 94-95, 126) does not qualify as an adverse employment action that has a significant detrimental effect under the law. Similarly, Ms. Hamrick's allegation that her male supervisor told her that he would continue to assign her insignificant programs does not entitle her to relief. Ms. Hamrick's allegation that she was "removed from the important position of VACM P[rogram] M[anager]", however (Am. Compl. ¶

125), constitutes a demotion or loss of job title.  Accordingly, taking this allegation as true and construing it in the light most favorable to Ms. Hamrick, her allegation sufficiently demonstrates that she suffered an adverse employment action.

As to Ms. Romaniuk's allegations, both her gender and national origin discrimination claims fail to sufficiently show that she suffered adverse employment action.  Ms. Romaniuk does not allege that she suffered a demotion or loss of job title. Instead, Ms. Romaniuk alleges that she received unappealing work assignments, was required to work with a certain supervisor, was criticized for her work, and was placed on a PIP.  None of these allegations constitute adverse employment action.

Ms. Romaniuk also alleges that she was excluded from weekly meetings for approximately six months.  Exclusion from meetings does not, by itself, constitute an adverse employment action, as the issue in a discrimination claim is whether the exclusion had a significant detrimental effect.  Aside from alleging that Ms. Romaniuk was harassed "for not completing assignments from these meetings" (Am. Compl. ¶169), the Amended Complaint does not allege any adverse action or significant detrimental effect resulting from Ms. Romaniuk's inability to attend the weekly meetings.  Thus, Ms. Romaniuk's allegations fail to sufficiently demonstrate that she suffered an adverse employment action.

Accordingly, the Court grants Harris' Motion to Dismiss Ms. Romaniuk's gender and national origin discrimination claims.

### 3.  Mss. Hamrick's and Romaniuk's Retaliation Claims

The Court denies Harris' Motion to Dismiss both Mss. Hamrick's and Romaniuk's retaliation claims because both claims sufficiently demonstrate that Mss. Hamrick and Romaniuk each suffered a "materially adverse" employment action.

A plaintiff's prima facie retaliation claim must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190.  It is important to note that what qualifies as adverse employment action for a retaliation claim is less onerous than what qualifies as adverse employment action for a discrimination claim.  See Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006) (concluding that Title VII's anti-retaliation provision is not coterminous with Title VII's substantive discrimination provision).  Protected activities include showing opposition, or complaining, to an employer about discriminatory practices, or participating in an employer's informal grievance procedure or in a Title VII investigation, proceeding, or hearing.  Kubico v. Ogden Logistics Servs., 181 F.3d 544, 551 (4th Cir. 1999).

Harris' Motion to Dismiss challenges only the second element of Mss. Hamrick's and Romaniuk's prima facie retaliation case, namely that the Plaintiffs suffered no adverse employment action. (Def.'s Mot. to Dismiss at 13-14, 17-18).

To show adverse employment action in a retaliation claim, a plaintiff only needs to show that the action was materially adverse, meaning that that action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (internal quotation marks and citation omitted). This objective standard is context specific. Id. at 69; Smith v. Vilsack, 832 F.Supp.2d 573, 585 (D.Md. 2011). "Excluding an employee from a weekly [meeting] that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." Burlington, 548 U.S. at 69 (internal citation omitted). Courts may consider the "combined effect of alleged events" when employing the objective reasonable person standard. Vilsack, 832 F.Supp.2d at 585 (internal citations omitted).

Here, the Court finds that, as to Plaintiffs' retaliation claims, both Mss. Hamrick's and Romaniuk's allegations sufficiently demonstrate that each of them suffered adverse employment action. First, Ms. Hamrick easily satisfies the less onerous objective standard required to demonstrate adverse

22

employment action in her retaliation claim. Specifically, Ms. Hamrick alleged that she was "removed from the important position of VACM P[rogram] M[anager]." (Am. Compl. ¶ 125). This removal demonstrates a "materially adverse" action that could have discouraged Ms. Hamrick from claiming workplace discrimination. Thus, the Court finds that Ms. Hamrick's retaliation claim sufficiently demonstrates adverse employment action.

Second, Ms. Romaniuk's allegations in her retaliation claim also sufficiently show that she suffered adverse employment action. An objectively reasonable person could view the following combination of events, to which Ms. Romaniuk was subjected, as materially adverse: (1) being restricted from attending weekly meetings where she received assignments; (2) having two former male supervisors, from whom she had been transferred after completion of an internal investigation concerning gender issues, inform her new male supervisor that she was a "troublemaker"; and (3) having old, adverse, reports that were previously removed after an internal investigation "dredged up" again by her new supervisor.

In sum Ms. Romaniuk has alleged actions that, when considered cumulatively, constitute material adversity under the objective standard. Thus, under the less onerous objective standard employed in retaliation claims, the Court finds that

Ms. Romaniuk's retaliation claim sufficiently demonstrated adverse employment action.

Accordingly, the Court denies Harris' Motion to Dismiss Mss. Hamrick's and Romaniuk's retaliation claims.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART as set forth below:

First, Harris' Motion to Dismiss all three Plaintiffs' hostile environment and sexual harassment claims is GRANTED. Secondly, Harris' Motion to Dismiss Ms. Romaniuk's gender and national origin discrimination claims is GRANTED. Thirdly, Harris' Motion to Dismiss Ms. Hamrick's gender discrimination claim is DENIED. Lastly, Harris' Motion to Dismiss Mss. Hamrick's and Romaniuk's retaliation claims is DENIED. Accordingly, the only surviving claims include Ms. Hamrick's gender discrimination claim, and all three Plaintiffs' retaliation claims.

Entered this 28th day of August, 2012

/s/
_____
George L. Russell, III
United States District Judge