IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| SUSAN ENGLER, et al., | : |
|     Plaintiffs, | : |
| v. | : Civil Action No. GLR-11-3597 |
| HARRIS CORP., | : |
|     Defendant. | : |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Harris Corporation's ("Harris") Motion to Sever Plaintiffs Susan Engler, Jacqueline Hamrick, and Antoanna Romaniuk's (collectively the "Plaintiffs") remaining gender discrimination and retaliation claims.[1] (ECF No. 12). This is a Title VII employment discrimination case in which the Plaintiffs allege they were terminated or forced to resign as a result of Harris' failure to end discriminating, harassing, and retaliatory behavior by male employees in its Columbia, Maryland, office.

The issue before the Court is whether the Court should grant Harris' Motion to Sever Plaintiffs' claims where Harris asserts that the risks of prejudice and jury confusion resulting from a joint trial of Plaintiffs' claims outweigh any benefits

---

[1] Plaintiffs' remaining claims include Ms. Hamrick's and Ms. Engler's gender discrimination claims and all three Plaintiffs' retaliation claims. (See ECF No.11 at 1; and ECF No. 30).

of maintaining consolidation. The issues have been fully briefed and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2011). For the reasons that follow, Defendant's Motion to Sever is granted.

## I. BACKGROUND[2]

### A. Ms. Engler

In September of 2006, Harris RF Communications Division ("Harris RFCD") hired Ms. Engler as a Contract Manager in its Columbia, Maryland, office. Ms. Engler complains that throughout her time at Harris, male employees were "hostile, rude, and demeaning." The Amended Complaint alleges instances such as Ms. Engler being excluded from meetings, having information withheld from her, and being "chastised" and treated with "disrespect and contempt." Ms. Engler also contends that she "did not receive the same administrative assistance as other similarly situated male managers." Ms. Engler further asserts that male employees often questioned her knowledge of contracts. Additionally, Ms. Engler maintains that Senior Programs Manager, Mark Cates, repeatedly and unnecessarily monitored the "comings and goings" of her and other female employees.

In August of 2008, Ms. Engler spoke with her boss, Paul Wilson, Contracts Director-1, regarding her concerns about the

---

[2] Unless otherwise noted, the following facts are taken from the Amended Complaint.

2

conduct of male employees in Harris' Columbia office. Mr. Wilson spoke with Dana Mehnet, President of Harris RFCD in Rochester, New York, regarding Ms. Engler's concerns. In April of 2009, Harris launched an investigation into the gender concerns at the Columbia office. As a result, Cortland Davidson, the local Humans Relations representative, accused Ms. Engler of "instigating charges of harassment and discrimination" through a "Women in Business" group that Ms. Engler had organized in Columbia.

After being told by Mr. Wilson that "things are not going to improve [in the Columbia office]," Ms. Engler received word that Harris was laying off employees. On June 25, 2009, the day after a debriefing about the results from the investigation into the gender concerns at the Columbia office, Ms. Engler was laid off.[3] On July 6, 2009, John White, a male Harris compliance officer, replaced Ms. Engler.

**B.  Ms. Hamrick**

In January of 2007, Ms. Hamrick transferred from a Harris office in Annapolis Junction, Maryland, to Harris RFCD in Columbia, Maryland. Ms. Hamrick worked as a Program Manager during her tenure at Harris' Columbia office. She first reported to Mr. Cates, until Mr. Cates was laid off in 2009;

---

[3] Harris also laid off Mr. Cates and Bruce Florack, a Level 3 Program Manager, in June 2009.

then she reported to Dick Rzepkowski.  Ms. Hamrick alleges that "sex discrimination and harassment from her male colleagues" resulted in "undesirable assignments" that were less important than those given to male colleagues.  She also argues that less qualified male Program Managers received the "lucrative and complicated projects."  Ms. Hamrick asserts that Mr. Rzepkowski "made it clear . . . that he would continue to assign her insignificant programs while she worked in his group."

Additionally, Ms. Hamrick maintains that two men from Harris' Rochester, New York, office "subjected [her] to verbal harassment and hostility."  Ms. Hamrick alleges, for instance, that Mr. Rzepkowski made comments that Hillary Clinton and a female manager at the National Security Agency ("NSA") got their positions because of their husbands' influence.  Ms. Hamrick further asserts that "no one ever informed her of [a] rumor" alleging that she was having an affair with Mr. Cates.  Ms. Hamrick also contends that male managers at Harris "repeatedly accused female employees of 'not working their hours,'" and that, prior to his termination, Mr. Cates accused Ms. Hamrick of not working her hours.  Ms. Hamrick claims that Mr. Cates raised his voice and interrupted her when she tried to address comments about her performance, but that Mr. Cates did not act this way with male employees.  Finally, Ms. Hamrick maintains that she complained to Harris human resources, but they "did not take any

4

action."  Subsequently, on December 21, 2009, Ms. Hamrick resigned due to "continued sex-based discrimination and [the] hostile work environment."

**C.  Ms. Romaniuk**

In November of 2008, Harris RFCD hired Ms. Romaniuk as an Engineering Manager in the Columbia, Maryland, office.  Several months after she was hired, Ms. Romaniuk was assigned as an Engineering Manager for the "JTT" program.  Ms. Romaniuk alleges that she did not receive the support she needed to correct hardware problems she found with the program and that "[m]anagement shifted the blame over the project from the male employees to [her] and placed her on a Position Performance [sic] Plan ("PIP")."  Ms. Romaniuk also argues that "[a]s a result of male hostility and harassment," she was excluded from meetings and "assigned projects already assigned to others which were behind schedule and cost."

Further, Ms. Romaniuk contends that while all male engineering managers were directed to report to Mark Turner, Director of the CSP Software Department, Ms. Romaniuk was "forced [by management] to remain under Len Lally, Senior Engineering Manager," despite Ms. Romaniuk repeatedly asking management to transfer her from Mr. Lally's supervision.  Ms. Romaniuk asserts that "[d]espite [her] repeated objections, Mr. Lally entered [her] office every day after hours (6:00 PM) and

closed the door so they could have a 'private' conversation." Ms. Romaniuk maintains that having the door closed made her feel "extremely uncomfortable and threatened."

Additionally, Ms. Romaniuk alleges that Mr. Lally was "condescending" and repeatedly commented that her Bulgarian accent was a problem. Ms. Romaniuk argues, for example, that Mr. Lally told her he "could not understand her" and that "she was the worst person with a foreign accent that he ever had to deal with." Ms. Romaniuk contends that Mr. Lally viewed her accent as the reason for her "poor communication skills."

Ms. Romaniuk complained to a company human relations representative about "Mr. Lally's hostile treatment of her." After six months of complaining to human resources, Ms. Romaniuk was allowed to attend the meetings from which she had previously been excluded. Additionally, Ms. Romaniuk argues that, compared to male colleagues, she received harsher criticism on her reports. Ms. Romaniuk was placed on a PIP in March 2009. Ms. Romaniuk contends, however, that her performance was "equal and/or superior to similarly situated male colleagues." After Harris conducted its investigation into gender issues at the Columbia office, Harris management "removed the PIP and all other adverse reports in Ms. Romaniuk's file" and placed Ms. Romaniuk under the supervision of Dan Pierce, Director of Engineering.

By November 2009, Ms. Romaniuk was placed back on a PIP, which contained the same performance allegations as the March 2009 PIP.  Ms. Romaniuk alleges, however, that Mr. Pierce "dredged up" the adverse reports which had been removed after the investigation.  Ms. Romaniuk claims that at the time of the November 2009 PIP, her performance was again "equal and/or superior to her similarly situated male . . . colleagues." Subsequently, on December 14, 2009, Ms. Romaniuk resigned due to her inability to tolerate the alleged discrimination and harassment.

## II. DISCUSSION

**A.     Standard of Review**

Plaintiffs may join together in one lawsuit if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed.R.Civ.P. 20(a)(1). "Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities."  Fed.R.Civ.P. 20(a)(3).   A court may also "order separate trials or make other orders to prevent delay or

7

prejudice." Fed.R.Civ.P. 20(b). Further, a court may "sever any claim against a party." Fed.R.Civ.P. 21. Similarly, "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed.R.Civ.P. 42(a).

Under Rules 20, 21, and 42, district courts are given broad discretion. Arnold v. E. Air Lines, Inc., 681 F.2d 186, 192 (4th Cir. 1982), on reh'g, 712 F.2d 899 (4th Cir. 1983); A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp., 559 F.2d 928, 933 (4th Cir. 1977); Equal Rights Ctr. v. Equity Residential, 483 F.Supp.2d 482, 489 (D.Md. 2007) (citing CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc., 896 F.Supp. 505, 506 (D.Md. 1995)(internal citation omitted)).

In determining a motion to sever, the U.S. Court of Appeals for the Fourth Circuit has identified the threshold inquiry a court should consider:

> [W]hether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Arnold, 681 F.2d at 193. Recently, this Court has recognized:

> [A] presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed, placing the burden on the party moving for severance to show that (1) it will be

> severely prejudiced without a separate trial; and (2) the issue to be severed is so "distinct and separable" from the others that a trial of that issue alone may proceed without injustice.

Equal Rights Ctr., 483 F.Supp.2d at 489 (internal citations omitted).

**B.   Analysis**

The Court grants Harris' Motion to Sever because the risk of jury confusion and prejudice is greater than any potential benefit to maintaining consolidation of the claims.

The Fourth Circuit has emphasized that when evaluating a motion to sever, the risk of prejudice and jury confusion needs to be weighed against four factors: (1) "the risk of inconsistent adjudications of common factual and legal issues"; (2) "the burden on parties, witnesses and available judicial resources posed by multiple lawsuits"; (3) "the length of time required to conclude multiple suits as against a single one"; and (4) "the relative expense to all concerned of the single-trial, multiple-trial alternatives." Arnold, 681 F.2d at 193.

When faced with severance issues concerning discrimination claims, the Fourth Circuit has found that when the misconduct in all of the plaintiffs' cases in a lawsuit is virtually identical, severance is inappropriate because the need for judicial economy outweighs the risk of prejudice and possible

9

jury confusion. See Harris v. L & L Wings, Inc., 132 F3d. 978, 980—82 (4th Cir. 1997).

For example, in Duke v. Uniroyal Inc., two plaintiffs brought age discrimination claims in violation of the Age Discrimination in Employment Act ("ADEA") against the defendant. 928 F.2d 1413, 1416 (4th Cir. 1991). Both plaintiffs were discharged from employment on the same day as part of the defendant's reduction in force. Id. Both plaintiffs were the "oldest and longest tenured" representatives in their regions. Id. The defendant applied the same employee performance criteria to both plaintiffs in order to determine whether each plaintiff would be terminated. Id. at 1416—17, 1420. In Duke, the force reduction was also implemented by the same individuals employed by the defendant. Id. at 1420. Accordingly, in Duke, the Fourth Circuit upheld the district court's denial of the defendant's motion to sever because the plaintiffs' claims arose from the same transaction, and the record presented no basis on which to conclude that evidence was confusing or prejudicial to the defendant. Id. at 1421.

Conversely, when the misconduct in each plaintiff's allegations in a discrimination lawsuit is based on different sets of facts, courts have found severance to be appropriate because the risk of prejudice and jury confusion outweighs any

jury confusion. See Harris v. L & L Wings, Inc., 132 F3d. 978, 980—82 (4th Cir. 1997).

For example, in Duke v. Uniroyal Inc., two plaintiffs brought age discrimination claims in violation of the Age Discrimination in Employment Act ("ADEA") against the defendant. 928 F.2d 1413, 1416 (4th Cir. 1991). Both plaintiffs were discharged from employment on the same day as part of the defendant's reduction in force. Id. Both plaintiffs were the "oldest and longest tenured" representatives in their regions. Id. The defendant applied the same employee performance criteria to both plaintiffs in order to determine whether each plaintiff would be terminated. Id. at 1416—17, 1420. In Duke, the force reduction was also implemented by the same individuals employed by the defendant. Id. at 1420. Accordingly, in Duke, the Fourth Circuit upheld the district court's denial of the defendant's motion to sever because the plaintiffs' claims arose from the same transaction, and the record presented no basis on which to conclude that evidence was confusing or prejudicial to the defendant. Id. at 1421.

Conversely, when the misconduct in each plaintiff's allegations in a discrimination lawsuit is based on different sets of facts, courts have found severance to be appropriate because the risk of prejudice and jury confusion outweighs any

benefit to judicial economy.  See Arroyo v. Chardon, 90 F.R.D. 603, 605—06 (D.P.R. 1981).

For example, in Watkins v. Hospitality Grp. Mgmt. Inc., No. 1:02CV00897, 2003 WL 22937710 (M.D.N.C. Dec. 1, 2003), two plaintiffs brought different discrimination claims against their employer.  Watkins, 2003 WL 22937710 at *1.  One plaintiff alleged age discrimination in violation of the ADEA, while the other plaintiff alleged race discrimination in violation of Title VII.  Id. at *1—4.  Both plaintiffs had the same supervisor in the company; each plaintiff, however, held a different position.  Id. at *1—3.  The court in Watkins observed that the case involved "two entirely separate sets of events and two separate causes of action."  Id. at *11.  Concluding that there would be significant risk of prejudice and jury confusion in a joint trial, the court stated that "[a] jury hearing allegations of a series of offensive comments toward both [p]laintiffs may view the evidence in the aggregate, prejudicing them against [the defendant], or they may confuse the evidence in some other manner when looking for discriminatory intent towards one [p]laintiff alone."  Id.  Additionally, the court concluded that the risk of inconsistent adjudications of fact or law was minimal.  Id.  The court emphasized that even though some witnesses would overlap, there would be little overlap of facts.  Id.  Thus, the court reasoned, finding discrimination

against one plaintiff and not the other would not cause inconsistent adjudication. Id. Finally, regarding judicial efficiency, the Watkins court concluded that having separate trials was not an undue burden on the parties or inefficient because separate trials were needed to ensure fairness. Id. at *12. Accordingly, the court granted defendant's motion to sever because plaintiffs' claims rested on different facts. Id. at *11–12.

In the present case, the Court grants Harris' Motion to Sever because (1) Plaintiffs' claims rest on different sets of facts; (2) the similarities between Plaintiffs' claims are not compelling; and (3) additional factors and concern for judicial economy do not outweigh the risk of jury confusion or prejudice.

**1. Plaintiffs' Claims Rest on Different Sets of Facts**

First, similar to the circumstance presented in Watkins, Plaintiffs' claims rest on different sets of facts and would likely lead to jury confusion and/or prejudice. Specifically, each Plaintiff in the present case was employed for a different length of time, held a different position, had different job duties, and reported to different supervisors. Not only was the alleged discrimination perpetrated by different individuals, but the circumstances surrounding each Plaintiff's allegations also vary from Plaintiff to Plaintiff. Moreover, Plaintiffs left

Harris under different circumstances — Ms. Engler was laid off, but Ms. Hamrick and Ms. Romaniuk resigned.

### 2. Similarities Between Plaintiffs' Claims are not Compelling

Second, Plaintiffs assert a multitude of unrelated allegations that could easily confuse the jury or cause the jury to view the evidence of discrimination in the aggregate. While there are similarities between Plaintiffs' claims (e.g., all three Plaintiffs have remaining retaliation claims; two of the Plaintiffs have remaining gender discrimination claims; all three Plaintiffs worked in the same division at Harris; the time period during which Plaintiffs worked at Harris overlaps; and all three Plaintiffs are represented by the same attorney), each Plaintiff submitted claims under a separate and distinct set of facts. Unlike the situation in Duke, the misconduct in the present case is neither virtually identical from Plaintiff to Plaintiff, nor did the claims arise from the same transaction or occurrence. Thus, similar to Watkins, the present case carries a significant risk of jury confusion or prejudice if the claims remain consolidated.

### 3. Additional Factors and Concern for Judicial Economy do not Outweigh the Risk of Jury Confusion or Prejudice

Third, the other Fourth Circuit factors emphasized in Arnold do not outweigh the significant risk of jury confusion or prejudice. There is little risk of inconsistent adjudications

13

of fact or law because there are very few facts in common between the claims. Thus, similar to <u>Watkins</u>, the risk of inconsistent adjudications is minimal. Additionally, the burden on the parties and/or witnesses does not outweigh the significant risk of jury confusion and prejudice. While consolidation of Plaintiffs' claims may lessen the burden because some of the witnesses for each Plaintiff's claim may be the same, this benefit is minimal. Therefore, even assuming the parties and/or witnesses would be burdened by separate trials, the significant risk of jury confusion and prejudice to Harris outweighs any benefit of maintaining consolidation of the claims.

As to the remaining factors concerning judicial economy, it is unclear whether time and resources would be saved by maintaining consolidation. On one hand, a consolidated trial could arguably take less time and use fewer resources because discovery would not be duplicated. On the other hand, discovery is unlikely to be duplicated because the claims involve different sets of facts. Moreover, it is unclear whether a single consolidated trial would take less courtroom time than separate trials, especially given that Plaintiffs' claims all stem from different sets of facts. Again, even assuming that judicial economy favored maintaining consolidation, the significant risk of potential jury confusion and prejudice to

14

Harris outweighs any potential benefit or convenience that may result from maintaining consolidation.

Accordingly, the Court grants Harris' Motion to Sever.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Sever (ECF No. 12) is GRANTED.

Entered this 18th day of October, 2012

_____/s/_____
George L. Russell, III
United States District Judge