IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUSAN ENGLER,                          :

        Plaintiff,                     :

v.                                     :        Civil Action No. GLR-11-3597

HARRIS CORPORATION,                    :

        Defendant.                     :

## MEMORANDUM OPINION

Plaintiff Susan Engler ("Engler") brings this action against
Defendant Harris Corporation ("Harris"), alleging she was fired
because of her gender and in retaliation for complaining about
discrimination in the workplace, both in violation of Title VII of
the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et
seq. (2012). Currently pending before the Court is Harris's Motion
for Summary Judgment (ECF No. 92), Motion for Sanctions Against
Engler (ECF No. 79), and Second Motion to Compel Full and Complete
Discovery Responses from Engler (ECF No. 78). The Court finds that
no hearing is necessary. See Md. Loc. R. 105(6) (D.Md. 2010). For
the reasons that follow, the Court will grant Harris's Motion for
Summary Judgment and deny as moot Harris's Motion for Sanctions and
Second Motion to Compel Full and Complete Discovery Responses.

## I. BACKGROUND

Engler was hired by Harris on September 5, 2006, as a first-
level contracts manager based in a satellite office of Harris's RF
Communications Division ("RFCD") located in Columbia, Maryland (the

"Columbia office"). Engler was hired to support the Communications Security Products ("CSP") group within RFCD. She reported to Paul Wilson, a contracts director located at RFCD's main office in Rochester, New York (the "Rochester office"). As a contracts manager, Engler was expected to interact with customers and work closely with Harris personnel in developing, negotiating, and administrating bid efforts and contracts. Engler was the first and only contracts manager to be located in the Columbia office.

During Harris's fiscal year 2009 an anticipated expansion of the CSP group did not materialize, and as a result of the projected decrease in revenue Harris ultimately determined a reduction-in-force ("RIF") was necessary. Harris considered 1,900 employees for inclusion in the RIF by utilizing a process known as Banding Analysis. The Banding Analysis organized the considered employees according to job function and assigned scores associated with specific criteria such as anticipated business needs, customer and program experience, job performance, skill criticality and versatility, technical and professional knowledge, and leadership skills. After the Banding Analysis determined the initial layoff selections, Harris conducted an additional statistical analysis known as Adverse Impact Analysis for the purpose of assessing and preventing adverse impact on any protected class.

A total of 179 employees across various Harris offices, including Rochester, Columbia, and Woodlake, Florida, were selected for inclusion in the June 2009 RIF. Of those employees, ninety-

seven were involuntarily released, including seventy-one men and twenty-six women. Engler was one of six people, four men and two women, in the Columbia office who were included in the RIF.

Engler was one of two RFCD contracts managers considered for inclusion in the RIF. In addition, a male senior contracts manager based in the Rochester office was also considered. Harris states several factors in selecting Engler for inclusion in the RIF over the male senior contracts manager. In addition, Harris asserts it determined that as a result of the anticipated decrease in CSP business there was no longer justification for Engler's contracts position in the satellite office and that Engler's work could be absorbed by existing employees in RFCD's Rochester office.

Engler, however, believes she was selected for inclusion in the RIF because she raised concerns throughout her employment about gender discrimination occurring in the Columbia office and participated in Harris's 2009 investigation into those allegations. In support of her contention, Engler relies on a number of events that occurred during the course of her employment at Harris that she believes exemplifies continuing discriminatory and retaliatory animus on the part of her male colleagues and Harris management. Furthermore, Engler asserts that she was performing at a level substantially higher than the male senior contracts manager retained by Harris, and that her performance rating of "Low Contributor" was pretextual.

On December 15, 2009, Engler filed an Intake Questionnaire with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging she was included in the RIF because of her age and gender, and in retaliation for participating in an internal investigation concerning gender discrimination in the Columbia office. The EEOC dismissed Engler's charge and issued a right to sue letter. On December 14, 2011, Engler filed this action. (ECF No. 1). On August 28, 2012, the Court dismissed Engler's age discrimination and hostile work environment claim, leaving only her claims of gender discrimination and retaliation. (See ECF Nos. 31, 53). On November 12, 2013, Harris moved for summary judgment on the remaining claims. Engler filed a Response in Opposition (ECF No. 109) and was granted leave to file a Corrected Opposition to Motion for Summary Judgment (ECF No. 112). Harris filed a Reply. (ECF No. 113). The Motion is now ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a

motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot

create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (quoting Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir.1984).

**B. Analysis**

### 1. Gender Discrimination Under Title VII

Harris moves for summary judgment on Engler's Title VII gender discrimination claim, arguing that the evidence does not establish a prima facie case of discrimination. The Court will grant Harris's Motion for Summary Judgment on Engler's discrimination claim because she fails to establish a prima facie case of discrimination and further fails to produce sufficient evidence to rebut as mere pretext, Harris's legitimate and non-retaliatory reason for her termination.

Engler catalogs a number of statements and events that occurred during her tenure at Harris. She argues these statements and events evidence a discriminatory attitude toward women at Harris and reflect direct evidence of gender discrimination against her. "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inference or presumptions." See O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995) (quoting Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993)) (internal quotation marks omitted), rev'd on other grounds, 517 U.S. 308 (1996). Here, the isolated and ambiguous statements and events Engler catalogs are

too abstract to establish direct evidence of gender discrimination and retaliation. Thus, the Court will analyze Engler's claims under the proof scheme articulated in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284-86 (4th Cir. 2004) (employing the <u>McDonnell Douglas</u> framework to analyze a discrimination claim based principally on circumstantial evidence).

Under the <u>McDonnell Douglas</u> standard, Engler must first establish a prima facie case of discrimination. <u>Id.</u> at 285. If she meets this burden, Harris can rebut the presumption of discrimination raised by Engler's prima facie case by establishing a legitimate, nondiscriminatory reason for her termination. <u>Id.</u> If Harris succeeds in doing so, Engler must then "prove by a preponderance of the evidence that the legitimate reasons offered by [Harris] were not its true reasons, but were a pretext for discrimination." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). Engler "bears the ultimate burden of proving that [Harris] intentionally discriminated against her." <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 959 (4th Cir. 1996) (citing <u>Burdine</u>, 450 U.S. at 253).

### a. Engler has failed to establish a prima facie case of gender discrimination

Engler has not established a prima facie case for gender discrimination in the RIF context. To do so, she must show that:

> 1) she was protected under Title VII, 2) she was selected from a larger group of candidates, 3) she was performing

7

> at a level substantially equivalent to the lowest level
> of that in the group retained, and 4) the process of
> selection produced a residual work force that contained
> some unprotected persons who were performing at a level
> lower than that at which the plaintiff was performing.

Corti v. Storage Tech. Corp., 304 F.3d 336, 341 n.6 (4th Cir. 2002). It is undisputed that Engler satisfies the first two prongs of her gender discrimination claim: as a woman, she is a member of a protected class under Title VII, see 42 U.S.C. § 2000e-2(a), and she was selected for inclusion in the RIF from a larger group of candidates. Thus, the Court focuses on the final two elements of the claim.

Harris argues Engler cannot establish a prima facie case of gender discrimination because she was not performing at a level substantially equivalent to the lowest level of those in the group retained. It also argues it did not retain similarly situated, poorer performing male employees in the same position. Further, even if Engler can establish a prima facie case, Harris argues it has established a legitimate, nondiscriminatory reason for terminating Engler under the RIF, and Engler has not offered any evidence sufficient to establish that Harris's reasons for terminating her were a pretext for a discriminatory purpose. The Court agrees.

### i. Engler cannot establish that she was performing at a level substantially equivalent to the lowest level of that in the group retained

Engler has failed to put forth admissible evidence sufficient to support an inference that she was performing at a level

8

substantially equivalent to the lowest level of the employees who were not selected for inclusion in the RIF. During Engler's first two years of service with Harris she was generally a good performer and received a "High Contributor" performance rating, which is the highest rating a Harris employee can receive. Her assessment for 2009, however, although incomplete, indicates she would have received a "Low Contributor" rating, which is the lowest rating a Harris employee can receive. Engler contends the "Low Contributor" rating is a pretext for discrimination. In support of her contention, Engler first argues because her Employee Action Form notates that she is eligible for rehire, Harris could not have been dissatisfied with her performance. Second, Engler suggests that a June 20, 2009 email between Human Resources staff Cathy Powers, Elizabeth Skrainar, and Esther Lumague, discussing the need to understand Engler's rating drop from "High Contributor" to "Low Contributor," evidences a pretext for discrimination.

With respect to Engler's Employee Action Form, "[t]he question in [the RIF] context is not . . . whether [members of the group] were meeting performance expectations, but whether the particular employees were selected for inclusion on the list for discharge [for discriminatory purposes]". Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir. 1993). Designating Engler as eligible for rehire may in fact demonstrate satisfactory performance, but mere satisfactory performance is not material here. Rather, Engler must present evidence of her performance relative to how the

remaining employees performed. See id. (discussing the need for alteration of the typical discrimination elements in the RIF context).

With respect to Engler's performance rating, because Engler argues her "Low Contributor" performance rating was false and pretextual, Engler's declining performance in the months preceding the RIF is discussed in more detail below. Ultimately, the Court finds that Engler has failed to put forth admissible evidence sufficient to support an inference that her performance was something better than low contributor. Thus, Engler cannot establish that she was performing at a level substantially equivalent to the lowest level of the employees who remained.

### ii. Engler cannot establish that male employees retained by Harris were performing at a lower level than her

Engler has failed to put forth admissible evidence sufficient to support an inference that male employees who were not selected for inclusion in the RIF were performing at a lower level than she was. Engler was one of two RFCD contracts managers considered for inclusion in the RIF. In addition to Engler, a male senior contracts manager based in the Rochester office was also considered. The senior contracts manager held a position one level senior to Engler and had twelve more years of service with Harris than Engler. His performance was rated overall as a "Successful Contributor," and he received an overall score of sixty-five on the

Banding Analysis. Engler's performance was rated overall as a "Low Contributor," and she received an overall score of thirty.

Engler argues Harris's Banding Analysis process, resulting in the senior contracts manager receiving a more favorable retention score, was unfair, subjective, and artificial. The Court addresses Engler's supposition with respect to the Banding Analysis in more detail below but does not find any reason to discredit the process. Thus, Engler cannot establish that, despite receiving higher performance scores, the male senior contracts manager really was performing at a level below her.

Further, Engler argues Harris assigned her remaining workload to a less qualified younger male, identified only as Mr. White, who had very little experience as a contracts manager. In support of her argument, Engler asserts she later learned that her previous supervisor closely supervised Mr. White because he was not qualified for the contracts manager position. (Pl.'s Corrected Opp'n Def.'s Mot. Summ. J. ["Opp'n"] 44, ECF No. 112). Unsupported speculation that the contracts compliance manager was under close supervision, however, is not sufficient to support an inference that he was performing at a lower level than she was at the time of the RIF.

Lastly, Engler argues Harris could have transferred her to an open contracts manager position created by a newly acquired company instead of including her in the RIF. The position she refers to was filled by a male junior contracts manager three months prior to

the RIF.  Based on Engler's assessment of the junior contracts manager's work, Engler asserts that he was also performing at a level below her.  Unsubstantiated allegations and bald assertions concerning her qualifications and the shortcomings of her co-workers, however, fail to create an inference that Engler was performing at a higher level.  See Evans, 80 F.3d at 960-61. (explaining that an employee's personal assessment that she is more qualified for a position is not relevant and does not raise a genuine dispute of fact).

Engler has failed to put forth any evidence that similarly situated male employees retained by Harris were performing at a lower level than she was.  Thus, Engler cannot establish a prima facie case of gender discrimination.  Accordingly, even in viewing the evidence in the light most favorable to her, Engler has failed to present evidence sufficient to permit a reasonable jury to find that her termination was the product of gender discrimination.

### b. Harris has put forward a neutral justification for Engler's termination that Engler has failed to show is pretextual

Assuming arguendo that Engler can establish a prima facie case of discriminatory termination, Harris articulated a legitimate, nondiscriminatory reason for Engler's termination:  Harris's business needs dictated that Engler's position be eliminated, and Engler's declining performance in the months immediately preceding the RIF.

"[Harris] is not required to persuade [the Court] that the proffered reason [for Engler's termination] was the actual motivation for [its] decision. [It] must merely articulate a justification that is legally sufficient to justify a judgment in its favor." Mereish v. Walker, 359 F.3d 330, 335 (4th Cir. 2004) (citation omitted) (quoting Burdine, 450 U.S. at 254-55) (internal quotation marks omitted). Moreover, "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct . . . ." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410-11 (7th Cir. 1997)). Here, the CSP group, for which Engler was hired to provide support, was experiencing a downward trend in project revenue and profit. As a result of the decline, Harris ultimately determined a RIF was necessary and there was no longer justification for Engler's position in the satellite office.

The Court concludes that Harris's stated reasons that it terminated Engler due to her declining performance in the months immediately preceding the RIF coupled with their decision to eliminate her position constitutes a legitimate, nondiscriminatory reason for her termination. Thus, the burden shifts to Engler to offer evidence that the articulated reason for her termination is pretextual.

"[Engler] can meet [her] burden of proving pretext either by showing that [Harris's] explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [gender] discrimination." Mereish, 359 F.3d at 336 (citing Burdine, 450 U.S. at 256). Engler argues Harris's Banding Analysis was unfair, subjective, and artificial, and that her "Low Contributor" performance rating was false and pretextual because it was inconsistent with her previous ratings and because her performance review was in the process of completion but had not been finalized at the time of the RIF. Finally, Engler argues there is a lack of factual support for Harris's assertion that it was experiencing financial difficulties at the time of the RIF.

Engler's attempt to show pretext by arguing Harris's Banding Analysis was unfair, subjective, and artificial fails. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." Evans, 80 F.3d at 960. The Fourth Circuit has previously approved of a ranking system examining a set of "functional competencies against which all applicants must be evaluated." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 266-67 (4th Cir. 2005). While Harris's objective factors were subjectively employed, "the mere fact that subjective criteria are involved in the reason articulated by an employer does not prevent according it sufficient rebuttal weight to dispel the inference of discrimination . . . ." Page v. Bolger, 645 F.2d 227, 230 (4th

Cir. 1981) (citing McDonnell Douglas Corp., 411 U.S. at 801).
Engler offers no evidence to establish that the Banding Analysis
was not consistently employed as to all employees considered for
the RIF. Thus, the Court cannot find any reason to discredit the
application of Harris's Banding Analysis to its decision to
terminate Engler. See Sagar v. Oracle Corp., 914 F.Supp.2d 688,
695 (D.Md. 2012) ("It is well established that 'in employment
discrimination cases involving a reduction in force, it is not the
court's duty to second guess the business judgment of defendant's
employees and managers' or the manner in which the reduction in
force is carried out. (quoting Conkwright v. Westinghouse Elec.
Corp., 739 F.Supp. 1006, 1017–18 (D.Md. 1990), aff'd, 933 F.2d 231
(4th Cir. 1991))), aff'd, 523 F.App'x 999 (4th Cir. 2013), cert.
denied, 134 S.Ct. 485 (2013).

Engler's disagreement with her low rank is also insufficient
to discredit Harris's rating system and similarly fails to support
a pretextual inference. The only support Engler offers for her
assertion that her rating as a low contributor was influenced by
gender discrimination is that her rating at the time of the RIF was
inconsistent with her previous ranking, and her 2009 performance
was not yet completed at the time of the RIF. Engler's supposition
is refuted by the record.

Engler's declining performance in the months preceding the RIF
is well documented in various email communications. For example,
in late 2008 Harris management began to express concerns about

Engler's performance and her seemingly unwillingness to work in partnership with the project managers in her division. (See Def.'s Mot. Summ. J. ["Mot. Summ. J."] Ex. 3 ["Decl. Paul Wilson"], at 7, 9-10, ECF No. 92-5); (Mot. Summ. J. Ex. 2 ["Decl. Richard Rzepkowski"], at 20-25, ECF No. 92-4); (Mot. Summ. J. Ex. 5 ["Decl. Esther Lumague"], at 10, ECF No. 92-7). In May 2009, a coworker complained about Engler not completing a task efficiently when another employee was able to complete the same task quickly. (Decl. Paul Wilson at 12-13). There are also two communications evincing Engler's confrontational and argumentative demeanor with a co-worker and a customer. (See Mot. Summ. J. Ex. 6 ["Decl. John Willingham"], at 16, 31, ECF No. 92-8).

Engler does not dispute that the events recounted above occurred, only that management's assessment of those events as reflecting negatively on her performance was pretextual. Engler attached to her Opposition an affidavit providing her alternate interpretation of each circumstance. The assessment of an employee's performance, however, is based on the employer's perception. Evans, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980) (internal quotation marks omitted))). It's only relevant that these events occurred and were assessed negatively by management. Unsubstantiated assertions concerning Engler's

personal assessment of her performance fail to raise an inference of discrimination or create a dispute of material fact.[1]

Even if the Court did conclude there existed a contested issue of fact with respect to Engler's performance rating, the contested fact is not material because Engler has failed to put forth admissible evidence sufficient to support an inference that the elimination of her position was pretextual. <u>See</u> <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 69 (7th Cir. 1995) (explaining that a plaintiff cannot avoid summary judgment if at least one reason for the employee's termination stands unquestioned). There is substantial support in the record to support Harris's claim that the elimination of Engler's position was motivated by the decline of the CSP business she was hired to support.

During the fiscal year 2009, RFCD reported a thirty-seven percent drop in sales for the first three quarters of the year. (<u>See</u> Mot. Summ. J. Ex. 7, at 2, ECF No. 92-9). A comparison of the January 2009 and March 2009 income statements demonstrate that between those two months RFCD decreased its projected revenue for

---

[1] Engler sets forth these assertions in her own affidavit attached as Exhibit K to her Opposition. (Opp'n Ex. K, ECF No. 112-12). Engler may not, however, withstand summary judgment by offering a conclusory, self-serving affidavit that is without corroboration. <u>See</u> <u>Nat'l Enters., Inc. v. Barnes</u>, 201 F.3d 331, 335 (4th Cir. 2000) ("[S]elf-serving affidavit[s are] not enough to defeat [Defendant's] motion for summary judgment."); <u>see also</u> <u>Mercer v. Arc of Prince Georges Cnty., Inc.</u>, 532 F. App'x 392, 397 (4th Cir. 2013) (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990)) (explaining that the object of Rule 56 is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit).

the upcoming fiscal year by nearly $200 million. (Decl. Richard Rzepkowski at 27, 29). Further, the May 2009 income statement reflected a $230 million reduction in expected revenue from U.S. Department of Defense contracts and planned reductions in investment and operating expenses, and noted that significant restructuring was necessary for the upcoming fiscal year. (Id. at 31).

Further, the record demonstrates Engler was aware of the economic difficulties facing RFCD during this time. (See Decl. Paul Wilson at 7, 15) (emails from Mr. Wilson discussing earnings shortfalls and cost reduction activity); (Hamrick Dep. 88:1 – 89:9, Sept. 26, 2013) (testifying to discussions she had with Engler with regard to potential layoffs); (Decl. John Willingham at 5, 7, 9, 32) (recognizing the financial shortfalls in RFCD business and the possibility of a RIF).

As a result of these economic challenges, Harris ultimately determined there was no longer justification for Engler's contracts position in the Columbia office. (Decl. Esther Lumague at 5, 19). Harris employees located in the Rochester office absorbed Engler's duties, and no contracts manager has been hired or assigned to the Columbia office since the RIF.

It is not the "function of this [C]ourt to second guess the wisdom of business decisions." E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992). Harris is free to make its business decisions, including reducing and reorganizing its work force, so

18

long as it does not discriminate in doing so. See id. (recognizing the importance of giving an employer the autonomy to make business decisions); see also Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 513 (4th Cir. 1994) ("[Title VII] was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges."). Despite Engler's contentions, the undisputed evidence indicates that Harris's determination that Engler's workload could be absorbed by existing employees in RFCD's main office in Rochester reflected existing business realities, not gender discrimination.

Engler has failed to meet her burden of creating a material dispute with regard to whether Harris's stated reasons for her termination were pretext for discrimination. Accordingly, summary judgment in favor of Harris with respect to Engler's discrimination claim is appropriate.

**2. Engler Fails to Establish a Claim of Retaliation**

In addition to her claim of sex discrimination, Engler further contends Harris retaliated against her by including her in the RIF as a result of her complaints about gender discrimination in the Columbia office. The Court will grant Harris's Motion for Summary Judgment on Engler's retaliation claim because she fails to establish causation between her complaints of gender discrimination and her termination and further fails to produce sufficient evidence to rebut as mere pretext Harris's legitimate and non-retaliatory reason for her termination.

To state a prima facie case of retaliation, Engler must show "(1) that [s]he engaged in a protected activity; (2) [Harris] acted adversely against [her]; and (3) the protected activity was causally connected to the adverse action." Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). It is undisputed that Engler engaged in a protected activity by complaining about the disparate treatment of women in the Columbia office, and that Harris acted adversely against her by terminating her employment. The parties, however, dispute whether the third element is satisfied.

To establish a causal connection, Engler must show Harris terminated her "because [she] engaged in a protected activity." Id. (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)) (internal quotation marks omitted). Furthermore, the Supreme Court of the United States recently clarified that claims of retaliation are evaluated under a "but-for" causation standard, and not under the "motivating factor" standard used to evaluate Title VII discriminatory claims. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)."). Under the "but-for" causation standard, Engler must establish that her complaints of gender discrimination were the but-for cause of her termination. See id. at 2534 ("[A] plaintiff making a retaliation claim under §

2000e-3(a) must establish that his or her protected activity was a
but-for cause of the alleged adverse action by the employer.").

Harris argues Engler's retaliation claim fails as a matter of
law given the seven months between Engler's disparate treatment
complaints to her supervisors and her inclusion in the RIF. "The
cases that accept mere temporal proximity between an employer's
knowledge of protected activity and an adverse employment action as
sufficient evidence of causality to establish a prima facie case
uniformly hold that the temporal proximity must be 'very close.'"
Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing
O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir.
2001)). "In cases where 'temporal proximity between protected
activity and allegedly retaliatory conduct is missing, [however,]
courts may look to the intervening period for other evidence of
retaliatory animus.' Specifically, evidence of recurring
retaliatory animus during the intervening period can be sufficient
to satisfy the element of causation." Lettieri v. Equant Inc., 478
F.3d 640, 650 (4th Cir. 2007) (citation omitted) (quoting Farrell
v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

Here, Engler does not rely on temporal proximity to establish
causation; rather, she relies on continuing discriminatory and
retaliatory animus during the course of her employment at Harris.
Thus, to survive summary judgment, Engler must produce
circumstantial evidence sufficient to raise a genuine dispute as to
the existence of recurring retaliatory animus and establish a nexus

between recurring retaliatory animus and her termination. Engler points to a number of isolated incidents over the course of her employment from which she asks the Court to infer that Harris harbored discriminatory and retaliatory animus culminating in her inclusion in the RIF.[2] The evidence Engler catalogs, however, is insufficient to create a genuine issue of material fact with respect to causation.

Engler alleges sometime in the fall of 2007, Paul Greco, Contracts Vice President-1, commented to Mr. Wilson that he was "very impressed with Ms. Engler's judgment and was happy that she is not one of those women who can't work with men." (Pl.'s Opp'n Mot. Summ. J., at 7, ECF No. 109). Engler contends this statement is reflective of the derogatory attitude toward women at Harris. "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination." <u>Brinkley v. Harbour Recreation Club</u>, 180 F.3d 598, 608 (4th Cir. 1999) (quoting

---

[2] Harris argues the allegedly discriminatory instances that occurred prior to February 18, 2009, are time barred under the Supreme Court's precedent in <u>National Railroad Passenger Corporation v. Morgan</u> and are therefore inadmissible. <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002) (holding that only those acts occurring within 300 days of the filing of a charge with the EEOC are actionable under Title VII). Because prior discriminatory acts can be considered as background evidence in support of Engler's timely retaliation claim, the Court will consider these instances for the purpose of determining whether there is sufficient circumstantial evidence to raise a genuine dispute as to the existence of recurring retaliatory animus sufficient to satisfy the element of causation. <u>See</u> <u>id.</u>

McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686 (7th Cir. 1991)) (internal quotation marks and alteration omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Here, the remark was an isolated event that occurred two years prior to her termination. It is plain that there was no nexus between the remark and Engler's inclusion in the RIF.

Also in the fall of 2007, Engler organized two meetings of a group called "Women in Business," which supported women employees in the Columbia office. Engler admits that at the time she initiated the Women in Business meetings Harris was supportive of the group and even paid for the group's first meeting. (Decl. Paul Wilson at 3; Engler Dep. 234:4–238:3, Sept. 20, 2013, ECF No. 92-6). Engler further contends, however, that as a result of spearheading this group, Cortlin Davidson, Human Resources Manager, wrote a memorandum in which he accused Engler of starting the Women in Business group to incite harassment and discrimination allegations among the female employees in the Columbia office. Engler's basis for her belief that such a memorandum exists stems from an April 2009 meeting in which Harris's legal counsel purportedly read from it. The memorandum, however, has not been admitted into evidence, and the mere possibility of the existence of this memorandum is insufficient to create an inference of discriminatory animus.[3]

---

[3] Engler argues Harris deliberately carried out an incomplete document search and withheld communications that support her

In August 2008, Engler met with Mr. Wilson, on behalf of a group of women at the Columbia office, to complain about being treated in a derogatory and disrespectful manner. Engler contends that after Mr. Wilson relayed her concerns to Dana Mehnert, President, RFCD, Rochester, Wilson began acting in a hostile manner and told Engler he could only protect her but not the other women in the Columbia office. This infers, however, that Engler's supervisor, Mr. Wilson, was attempting to give her better treatment than her peers and, therefore, is insufficient to create an inference of discriminatory animus.

Engler asserts that she was forced to move her office and give her office furniture to a male, senior programs manager in October 2008. The office moves occurred to accommodate the arrival of the new engineering director at the Columbia office. (Decl. Richard Rzepkowski at 7-15). Engler was one of five employees, three male and two female, moved during the office rearrangement. Id. Engler was moved closer to other employees her job required close collaboration with and the move was arranged in coordination with her supervisor, who believed moving her office would facilitate

---

claims. Engler does not seek sanctions; rather, she attempts to create a dispute of material fact through the inference that Harris is withholding evidence detrimental to its defense. Other than her own affidavit, Engler provides no other affidavits, deposition testimony, or any other admissible evidence for the Court to consider in support of her discovery violation allegation. See supra note 1. Further, she failed to move for an order compelling production or for an order compelling inspection under Federal Rule of Civil Procedure 37(a)(3)-(4). Thus, the Court declines to find a dispute of material fact on this basis.

teamwork and increase efficiency. (Id. at 17). Engler offers no admissible evidence to the contrary. Thus, the office move is insufficient to create an inference of discriminatory animus.

Engler contends that in November 2008 a senior program manager, Mr. Cates, instructed his subordinates to complain to Engler's supervisor if she did not turn around requests in the time specified. Engler has no personal knowledge of this instruction, outside of what she was told by her co-workers that were in attendance at the meeting. (Engler Dep. 44:2–49:1). Nonetheless, completing job tasks within a specified deadline is a necessary workplace construct to ensure productivity and is unrelated to gender. Engler provided no admissible evidence indicating that males in the organization were given more flexibility with respect to their assignments.

Next, Engler contends Mr. Cates's statement that she was there to "do what you are told and nothing more" is reflective of the derogatory attitude toward women at Harris. (Engler Dep. 50:2–5). This statement, however, is not discriminatory on its face, as it could have been made in reference to any male or female employee. Nor is it placed in any discriminatory context.

Engler further contends Mr. Cates raised spurious complaints about her arriving late to work, being unavailable to answer emails while traveling on business, and having difficulties dealing with other employees and customers, all in an attempt to create pretext for Engler's low performance rating. Even if Mr. Cates's behavior

is reflective of discriminatory animus, however, Engler provides no admissible evidence indicating that Mr. Cates was involved in selecting individuals for inclusion in the RIF. See <u>Hill</u>, 354 F.3d at 288-89 (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 151-52 (2000)) (explaining that the plaintiff must present sufficient evidence to establish that the person allegedly acting under a discriminatory animus must be principally responsible for the contested employment decision). Thus, any discriminatory animus on the part of Mr. Cares is insufficient evidence of causality.

Engler contends that because of her gender, Harris refused to provide her with adequate administrative assistance to help manage her workload and prevent her from having to work excessive hours. She further contends that she was unable to receive adequate support because two male managers dominated the administrative support available to the employee at the Columbia office. Harris employed only two administrative assistants to support all 50 employees in the Columbia office, and no employee had exclusive access to any one assistant. As a result, administrative support was in high demand, and tasks were handled in accordance with Harris's business needs and priorities. All employees had equal access to administrative assistance based on the criticality of the project they were working on. (<u>See</u> Def.'s Mot. Summ. J. Ex. 1, ¶ 15, ECF No. 92-3). Engler had the same access to administrative support as other employees in the Columbia office. Thus, the lack

of administrative support is irrelevant and insufficient to create an inference of discriminatory and retaliatory animus.

Finally, Engler contends in April or May 2009, Mr. Wilson invited her to dinner to determine whether she wanted to remain at Harris given her complaints concerning the poor working environment for women at the Columbia office. Engler indicated that she was interested in staying at Harris but she expected Mr. Wilson to support her charge to improve the working conditions for women. (See Engler Dep. 99:18-100:3). In response, Mr. Wilson purportedly told Engler that the working conditions for women were unlikely to improve because management will "do what they do because they can and they can get away with it, so you gave me my answer." (Id. at 100:4-6). Engler surmises that Mr. Wilson then recommended her for the RIF because he concluded from the dinner conversation that she would continue to complain about the poor working environment for women at the Columbia office. (Id. at 105:6-107:13). Engler's mere belief that Mr. Wilson recommended her to be included in the RIF is unsupported by the record, irrelevant, and insufficient to establish causality.

Engler has failed to carry her burden to establish a genuine dispute of material fact sufficient to permit the inference that her termination would not have occurred "but-for" her complaints about gender discrimination in the Columbia office. Even assuming arguendo Engler could establish a prima facie case of retaliation, the point becomes moot because she cannot sufficiently demonstrate

27

pretext for the same reasons she could not make that showing with respect to her gender discrimination claim. She presented no evidence that Harris fired her in retaliation as opposed to the elimination of her position as dictated by Harris's business needs, coupled with her declining performance in the months immediately preceding the RIF. Accordingly, the Court will grant summary judgment in favor of Harris with respect to Engler's retaliation claim.

## IV. CONCLUSION

For the reasons given above, Harris's Motion for Summary Judgment (ECF No. 92) is GRANTED, and Harris's Motion for Sanctions (ECF No. 79) and Second Motion to Compel Full and Complete Discovery Responses (ECF No. 78) are DENIED as MOOT.[4] A separate Order will follow.

Entered this 7th day of April, 2014

/s/

_____
George L. Russell, III
United States District Judge

---

[4] As a result of the Court granting judgment in favor of Harris, the case will be closed. Thus, Harris's pending motions are moot.